## EMALA *v.* WALTER G. COALE, INC.

[No. 438, September Term, 1965.]

*Decided October 13, 1966.*

*Motion for rehearing filed November 7, 1966, denied November 8, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Thomas L. Hennessey* for the appellant.

*William S. James* for the appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Walter G. Coale, Inc. (Coale) took a judgment by confession against Emala Associates, Inc. (Associates) and "Frank J. Emala, pres." on June 1, 1959, on a promissory note for $3,412.76. Frank J. Emala, denying that he was individually liable, refused to pay the judgment. Associates has gone out of business and has had no assets. In August 1963 Coale filed a petition seeking a declaration that the judgment entered against "Frank J. Emala, pres." "binds Frank J. Emala individually and personally."

After a hearing at which there was received the testimony of Coale's witnesses as to the background of the giving of the note and the manner and purpose of its endorsement, Judge Jenifer ruled in a careful and thorough opinion, first, that declaratory relief under the Uniform Declaratory Judgments Act of Maryland, Code (1957), Art. 31A, was permissible and appropriate and, second, that Emala was personally liable for the amount of the debt represented by the promissory note on which judgment was entered.

Emala appealed and here urges as he did below that declaratory relief is not appropriate "to reform the judgment by confession," and that he was not personally liable for the promissory note sued on and is not individually bound by the judgment.

We find no need to decide the first question since, assuming declaratory relief to have been proper and appropriate under

the circumstances, we think that Emala was not personally liable on the note and not bound individually by the judgment.

The testimony shows that Coale began selling farm implements and equipment to Associates in 1956. On March 26, 1958, Associates owed Coale $2,527.23. Mr. P. Mitchell Coale, president of Coale, felt there was need for more security than Associates' present or potential ability to pay offered and dispatched the salesman who handled the Associates account to procure a thirty-day promissory note for the balance due signed by Associates and endorsed by Emala individually. The salesman accomplished his mission. The two corporations continued to do business and each month a note for the balance due Coale by Associates—the amount of the original note plus interest and new charges, less payments made on account—was given and the preceding note was returned to Associates. For a while Emala endorsed each note personally. Beginning with the note of February 25, 1959, or perhaps even before that, he did not endorse as "Frank J. Emala," as he had done previously, but as "Frank J. Emala, pres." which was the way he had always signed the notes under the name of the corporation of which he was president, Emala Associates, Inc.

The notes were deposited with a bank as collateral for Coale's debt to the bank and each was endorsed by Coale under Emala's endorsement, in whatever form it appeared.

Apparently when the March 1959 renewal note was received from Associates and the February note came back from the bank, Mitchell Coale noticed the addition of the letters "pres." to Emala's signature. He and another of his salesmen, named Niblett, went to see Emala in an effort to have him give them a new note endorsed without the letters "pres." Both testified candidly that Emala bluntly and emphatically told them he had been advised to get his signature as an individual "off of the back of the note," and that he would not give them a new note. There was a long discussion with no bitterness or argument during which the earlier notes endorsed by Emala individually were lying on the table at which the parties were seated and were seen by Coale and Niblett. They specifically requested Emala's personal endorsement—"We visited him with this note for the specific reason of getting another note from him signed on the

back as Frank J. Emala." Emala said he was "adding president to his name because he did not want to be personally liable, personally responsible for the debt."

If the precise meaning of a person's signature or endorsement on a note—that is, whether he writes to bind himself personally or in a representative capacity—cannot be determined from the instrument itself, parol evidence is admissible between the original parties to resolve the doubts or ambiguities. *In Haile v. Peirce,* 32 Md. 327, 332, distinguishing *Sumwalt v. Ridgely,* 20 Md. 108, the Court said:

> "When the note is of this last description, that is, where its language or its terms are so unintelligible as to admit of no rational interpretation of the meaning, or are not sufficiently decisive of the intention of the parties, but on the contrary, are equivocal and uncertain; extraneous proof, as between the original parties, may be admitted to show the true character of the instrument, and what party,—the principal, or the agent, or both, is liable.
>
> "Where individuals subscribe their proper names to a promissory note, *prima facie,* they are personally liable, though they add a description of the character in which the note is given, but such presumption of liability may be rebutted, as between the original parties, by proof, that the note was in fact given by the makers, as agents, with the payee's knowledge. Byles on Bills, 27, n. 1."

The matter usually turns on the intent and understanding of the parties. *Southern Supply Co. v. Mathias,* 147 Md. 256; *Johnson Milling Co. v. Brown,* 173 Md. 366; *Leahy, Executrix v. McManus,* 237 Md. 450.

In the case at bar the evidence leaves no doubt that Emala did not endorse the last two notes intending to be bound as an individual. He added the letters "pres." after his endorsement to negate the idea that he was to be individually liable, and to prevent his becoming so, using precisely the form he used to sign the note for Associates as its president. Coale's officials understood this but they did not attempt by suit to impose per-

sonal liability on Emala by reason of his earlier guarantees of Associates' debt, nor, on the note on which Coale did sue Emala, did it sue him as an individual or cause process to be served on him as an individual but both sued him and served him and took judgment against him as "Emala, pres." With full knowledge that Emala intended and considered his endorsement in this form to be in a representative and not an individual capacity, Coale knowingly and deliberatively took judgment in the representative rather than the individual form. We think it now is bound by the form of the long enrolled judgment it took and that, under the circumstances, that form of judgment does not bind Emala individually.

*Order reversed, with costs.*