**Jeffrey KUEHL and Gateway Insurance Associates, Ltd., Appellants,**

v.

**FREEMAN BROTHERS AGENCY, INC., Appellee.**

**No. 93–676.**

Supreme Court of Iowa.

Sept. 21, 1994.

Rehearing Denied Oct. 17, 1994.

S.P. DeVolder of Lewis, Webster, Johnson, Van Winkle & DeVolder, Des Moines, for appellants.

Robert E. Konchar, Chris J. Scheldrup, and Paul D. Gamez of Moyer & Bergman, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

This case raises several questions arising out of the sale of an insurance agency in a bench trial of a law action. We affirm the trial court's judgment in all respects.

I. *Background facts and proceedings.* On March 23, 1987, Jeffrey Kuehl sold his insurance agency, Gateway Insurance Associates, Ltd. (Gateway), an Iowa corporation, to defendant Freeman Brothers Agency, Inc. (Freeman Brothers). The purchase agreement required seller to be responsible for all claims arising out of any errors or omissions occurring in business transacted by seller prior to March 1, 1987 and to maintain professional liability insurance for such errors and omissions. Although the purchase agreement referred to Gateway as the seller, Kuehl, as the sole owner of Gateway, signed the agreement both in his individual capacity and in his representative capacity as president of the Gateway corporation.

Prior to the sale, Kenneth Steine contacted Kuehl to obtain insurance for a 1978 Chevrolet Camaro automobile. The Steine family had its other vehicles insured through Gateway and wished to insure the Camaro for their son, Steven. Kenneth apparently told Kuehl that Steven was the owner of the vehicle and would be the primary driver. Kuehl told Kenneth the insurance rates for the Camaro would be high because of Steven's poor driving record. Kenneth claimed Kuehl did not inquire into Steven's problems with alcohol and drugs. Kuehl claimed Kenneth told him he did not know how Steven would pay the higher premiums and that he would get back in contact with Kuehl to tell Kuehl how to proceed.

In any event, in January 1987 Kuehl insured the Camaro with American Interinsurance Exchange (AIE). Kuehl allegedly insured the Camaro with AIE because it was a nonstandard insurer that would underwrite high-risk insureds. The application for insurance that Kuehl filed with AIE listed Kenneth and his wife, Jerry Ann, as drivers and Kenneth as the owner of the Camaro. It did not list Steven as the owner or as a driver. Also, Kuehl signed Kenneth's name to the application, apparently without Ken-

neth's knowledge or consent. Kuehl claimed he temporarily listed Kenneth and Jerry Ann as the insureds to avoid a gap in coverage while Kenneth determined how he would handle the higher insurance premiums. Freeman Brothers' purchase of Gateway included the right to commissions payable on the renewal of policies, such as the Steine policy with AIE.

A few months after Gateway's business was sold to Freeman Brothers, Kuehl turned in his license to sell insurance in Iowa to the Iowa insurance commissioner, apparently because of irregularities in his underwriting practices. Kuehl relocated to Florida and presently runs an insurance agency in that state.

On the Steine policy's anniversary date in July 1987, Freeman Brothers renewed the policy with AIE as it had been written by Kuehl. Steven Steine was still not listed as an insured. Kenneth testified that after the renewal he contacted Freeman Brothers' general office manager, Connie Arp, and apparently told her Steven would be taking the Camaro to Colorado while he attended college. However, Arp claimed that if Kenneth had told her Steven was taking the Camaro to Colorado she would have taken action to update the Steine file. Arp apparently did not look at the file and did not discover Steven was not a named insured.

While in Colorado in September 1987, Steven drove the 1978 Camaro and negligently caused an automobile accident killing Denise Gomez and seriously injuring her husband, David Gomez. Because Steven was intoxicated at the time of the accident, he was convicted of vehicular homicide. A civil action was brought by David Gomez against Steven in Colorado. Steven's attorney estimated that the compensatory and punitive damages in Gomez's civil action against Steven could together reach two million dollars.

After notification of the civil action against Steven, AIE discovered that he was not a named insured on the policy and that Kenneth's signature on the insurance application had been forged. AIE later determined that it would not have insured Steven if it had known of his driving record. AIE ultimately agreed to defend Steven in the civil action under a reservation of rights to claim the policy application contained errors and omissions. AIE sent a notice of its reservation of rights to the Steines, Kuehl, Freeman Brothers, and Freeman Brothers' errors and omissions carrier, Employers Reinsurance.

Before the Gomez claims were settled, AIE was declared insolvent in Indiana. The Iowa Guaranty Corporation, *see generally* Iowa Code ch. 515B (1991), initially refused to step in and defend the Gomez litigation because it discovered AIE's license to operate in Iowa was not in effect. Therefore, Freeman Brothers did not ask the guaranty corporation to defend the Gomez case.

Meanwhile, a liquidator for AIE had been appointed in Indiana, where AIE's home office is located. Based on its low priority in claims against AIE and the defenses AIE could assert, Freeman Brothers did not submit a claim to the Indiana liquidator concerning the Gomez lawsuit.

Freeman Brothers subsequently informed Kuehl of the Gomez lawsuit, but Kuehl refused to provide a defense or indemnification to Steven. Kuehl's errors and omissions insurance had lapsed.

Faced with a situation where no other insurer or person would defend Steven Steine against or pay any judgment from the Gomez lawsuit, Freeman Brothers and Employers Reinsurance settled with David Gomez for $150,000. The Steines, Freeman Brothers, and Employers Reinsurance each executed a settlement agreement with Gomez. The parties did not give Kuehl notice of the agreement.

After the settlement was reached, AIE's license was reinstated by a nunc pro tunc order of the Iowa insurance commissioner, and the Iowa guaranty corporation then acknowledged its obligation to take over claims against the insolvent company.

Around the time of the settlement of the Gomez claims, Freeman Brothers stopped making payments on the purchase agreement it had with Gateway and Kuehl.

Gateway and Kuehl brought the present suit against Freeman Brothers for breach of contract. Plaintiffs alleged and defendant

admitted that Gateway and Kuehl agreed to sell and Freeman Brothers agreed to buy the Gateway insurance agency.

Freeman Brothers counterclaimed on the basis of fraud, negligence, misrepresentation, contribution, indemnity, and breach of contract in connection with amounts paid in settling the Gomez lawsuit. In its counterclaim, Freeman Brothers alleged that Freeman Brothers agreed to purchase and that plaintiffs Kuehl and Gateway agreed to sell certain assets of Gateway. Plaintiffs admitted that allegation in their answer to the counterclaim. In its prayer for relief, Freeman Brothers sought punitive damages.

Gateway and Kuehl's petition claims were settled prior to trial for $105,000, Freeman Brothers' execution of a promissory note, and the dismissal of the portion of Freeman Brothers' counterclaim for punitive damages. The case proceeded through a bench trial on the remainder of Freeman Brothers' counterclaim.

The trial court determined Gateway and Kuehl breached the purchase agreement with Freeman Brothers by failing to pay, and by failing to maintain professional liability insurance, for errors and omissions that predated the purchase agreement. The court then determined these failures proximately caused Freeman Brothers and its errors and omissions carrier to settle the Gomez case. The court entered judgment against Gateway and Kuehl individually for $150,000. It ruled in favor of Gateway and Kuehl on Freeman Brothers' remaining tort-based counts.

Gateway and Kuehl appealed.

Our standard of review is for correction of errors at law. Iowa R.App.P. 4; *R.E.T. Corp. v. Frank Paxton Co.*, 329 N.W.2d 416, 418–19 (Iowa 1983). The trial court's findings of fact are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

■ II. *Breach of the purchase agreement.* Kuehl contends that the trial court erred in finding and concluding that Kuehl and Gateway breached the errors and omissions clause of the purchase agreement. We agree with the trial court.

Paragraph 6 of the purchase agreement between Freeman Brothers and Kuehl and Gateway provided:

6. *PRIOR ERRORS AND OMISSIONS.* SELLER shall be responsible for payment of any and all claims arising out of any error or omission occurring in business transacted by SELLER prior to the effective date of this agreement and SELLER shall purchase and maintain professional liability insurance coverage in an amount not less than $300,000.00 to cover all potential errors or omissions of the SELLER or of its agents for business transacted by SELLER prior to March 1, 1987.

Plaintiffs breached this errors and omissions clause in two respects. First, there is no dispute that after September 15, 1987 plaintiffs failed to carry professional liability insurance coverage for business plaintiffs wrote and transacted prior to March 1, 1987, such as the Steine policy. Second, substantial evidence supported the trial court's finding that plaintiffs mishandled the Steine policy application for insurance. Kuehl's acts on the Steine policy application in January 1987 with AIE did not list Steven Steine as an owner or driver of the 1978 Camaro or his poor driving record. Kuehl also signed Kenneth Steine's name on the application without Kenneth's permission or authorization.

We therefore conclude that the trial court had an adequate basis for ruling that Kuehl and Gateway breached the contract by their refusal to be responsible for the payment of the Gomez claims which arose out of these earlier errors and omissions, and breached the contract by their failure to maintain professional liability insurance to cover such errors and omissions.

■ III. *Foreseeability of Freeman Brothers' damages.* Plaintiffs next contend that the trial court erred in determining that Freeman Brothers' settlement with David Gomez on his claims against Steven Steine was foreseeable and proximately caused by Kuehl and Gateway's errors and omissions, and therefore was compensable. We believe the trial court correctly decided this issue.

■ Distinct from the general rule for damages based on commitment of a tort, damages based on breach of a contract must have been foreseeable or have been contemplated by the parties when the parties entered into the agreement. *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854); *Meyer v. Nottger*, 241 N.W.2d 911, 920 (Iowa 1976); 25 C.J.S. *Damages* § 80, at 888 (1966). Whether the damages were reasonably anticipated by the parties when the contract was formed may be discerned from "the language of the contract in the light of the facts, including the nature and purpose of the contract and circumstances attending its execution." 22 Am.Jur.2d *Damages* § 460, at 541 (1988). Damages which a reasonable person would expect to follow from breach of a contract are direct and thus should be awarded. *Id.*

Applying these principles to the facts of this case, we conclude that the parties contemplated the type of damages Freeman Brothers seeks. The Gomez claims, which Freeman Brothers settled, were claims which posed potentially significant liability for Freeman Brothers due to Kuehl and Gateway's errors and omissions on the Steine application. The language of the contract in paragraph 6 specifically provides that seller would "be responsible for payment of any and all claims arising out of" sellers' errors and omissions. Furthermore, the fact that this type of damages was in the minds of the parties when they entered into the contract can be discerned from the circumstances surrounding its execution. At the time of contracting, allegations had been raised that Gateway was losing coverage with insurance companies due to Kuehl's alleged misrepresentations to the companies. With all of the parties aware of these allegations, it was reasonable for the trier of fact to conclude that both Freeman Brothers (to protect itself) and Kuehl (to help sell Gateway) recognized Gateway and Kuehl would be liable for any future claims, such as the Gomez claim, based on Kuehl and Gateway's errors and omissions.

Plaintiffs argue that the parties did not anticipate plaintiffs' responsibility for payment of claims arising from Freeman Broth-

ers' malpractice but only from plaintiffs' malpractice. Plaintiffs assertion is correct but inapplicable to the facts presented here. As stated by the trial court:

> Freeman Brothers discovered many discrepancies in the way Kuehl had filled out his applications to various insurance companies, and it was having to go back and reunderwrite a number of policies. This took a good deal of time and effort, and the Steine policy was not one of the policies which had been reviewed by late September. The Steine policies, including the AIE policy for the Camaro, were renewed after Kuehl had left for Florida, but before Freeman Brothers noticed the inaccuracies in the application and policy.

Freeman Brothers still had not reached the Steine policy for review before the Steven Steine–Gomez accident occurred. Freeman Brothers' inability to quickly discover and correct plaintiffs' numerous misrepresentations on the insurance policies initiated by plaintiffs does not relieve plaintiffs of their responsibility under the contract for their original mishandling of the Steine policy.

Although there was evidence to the contrary, we believe substantial evidence supported the court, as a trier of fact, in its finding and conclusion that Freeman Brothers' settlement of the Gomez action arose out of Kuehl's failure in January 1987 to place Steven Steine's name on the Steine policy with AIE while nevertheless representing to Kenneth Steine that Steven was covered.

Plaintiffs also contend that although the parties did contemplate plaintiffs' responsibility for payment of claims based on Kuehl and Gateway's professional negligence, the parties did not anticipate the insolvency of AIE. This assertion, however, does not render the damages unforeseeable. As noted by the trial court, "[f]oreseeability of the *type* of damage is the focus of Iowa law." *Yost v. City of Council Bluffs*, 471 N.W.2d 836, 840 (Iowa 1991) (emphasis added). *See also* 22 Am.Jur.2d *Damages* § 463, at 542 (1988) ("The principle that damages, to be recoverable, must have been in the contemplation of the parties at the time the contract was made, does not require that the defaulting party know the specific details of the injury

or of the damages which followed in fact."). As mentioned, the Gomez claim is the *type* of damages contemplated by the parties in paragraph 6 of the purchase agreement—a claim based on the sellers' errors and omissions.

Accordingly, whether Freeman Brothers indemnified a solvent AIE after AIE paid the Gomez claims or Freeman Brothers paid the Gomez claims directly to Gomez is irrelevant. Either payment would have arisen from Kuehl's errors and omissions on the Steine policy and that type of damages was foreseen by the parties, as evidenced by the specific provision of paragraph 6 in the contract and the circumstances surrounding execution of the contract.

The trial court thus correctly found and concluded the $150,000 settlement of the Gomez claims by Freeman Brothers constituted foreseeable damages under the purchase agreement.

IV. *Mitigation of damages.* Plaintiffs Kuehl and Gateway further contend that even if they are liable to Freeman Brothers, Freeman Brothers is not entitled to recovery of the funds expended in the Gomez settlement because Freeman Brothers failed to mitigate its damages. Plaintiffs' specific contention is that Freeman Brothers should have filed a claim with the AIE liquidator in Indiana and the Iowa Guaranty Corporation, both of whom succeeded AIE after its insolvency. The trial court rejected this argument, and so do we.

A person asserting breach of contract has a duty to mitigate the damages. *See DeWaay v. Muhr,* 160 N.W.2d 454, 457 (Iowa 1968). This duty imposes on the complaining party the obligation to exercise all reasonable diligence to lessen the damages caused by the other party's breach. *See R.E.T. Corp.,* 329 N.W.2d at 422.

Applying these principles, the trial court stated:

As a result of the breach, Freeman Brothers was placed in a position of having to try and settle the Colorado claims on a reasonable basis so that they would not be held liable for amounts far exceeding any insurance coverage. Freeman Brothers was damaged in the amount of $150,000, which was the amount paid to settle the claims. This amount was reasonable even though hindsight may indicate that the Iowa Guaranty Corporation might have been able to cover a portion of the losses. Payment made by Freeman Brothers, or on behalf of Freeman Brothers, was not a "voluntary" contribution but was necessary to protect Freeman Brothers' potential liability.

In addition, Freeman Brothers had no incentive to pursue the claims against the AIE liquidation estate or the Iowa Guaranty Fund because to the extent that these entities stepped into the shoes of AIE, they could assert any and all defenses of AIE to a claim by Freeman Brothers or its errors and omissions carrier, Employers Reinsurance. *See Stecher v. Iowa Ins. Guar. Ass'n,* 465 N.W.2d 887, 888 (Iowa 1991). These could include Kuehl's alleged forgery of Kenneth Steine's name on the application for insurance, and Kuehl's failure to list Steven Steine as an owner or driver of the 1978 Camaro and his poor driving record.

We believe the trial court properly concluded that Freeman Brothers, in settling a potential multimillion dollar claim for $150,-000, exercised all reasonable diligence to resolve the problem caused by plaintiffs' breach and did not fail to properly lessen its damages.

V. *Kuehl's personal liability.* Kuehl finally contends that the trial court erred in concluding that he was personally liable for breach of the 1987 purchase agreement with Freeman Brothers. Kuehl signed the contract in both his representative and his individual capacity. Nevertheless, he argues that because the errors and omissions clause did not contain any reference to him personally while a separate clause, the covenant not to compete, did, the contract manifested the parties' intent not to hold Kuehl individually liable. We disagree.

In the construction of contracts, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says. Iowa R.App.P. 14(f)(14).

As we stated in *Baker v. Chambles,* 4 Greene 428, 430 (Iowa 1854), "if the name of the principal and the relation of agency be stated in the writing, and the agent is authorized to make the contract or obligation, the principal alone is bound, unless the intention is clearly expressed to bind the agent personally." *See also Ristvedt v. Nettum,* 311 N.W.2d 574, 577 (N.D.1981) ("[T]here must be an intent to bind the signing party individually.").

■ We believe Kuehl's intention to be bound personally is clear by the signatures at the end of the purchase agreement:

> IN WITNESS WHEREOF, the undersigned have hereunto affixed their signatures.
>
> GATEWAY INSURANCE ASSOCIATES, LTD.
>
> By /s/ Jeffrey Kuehl
> Jeff Kuehl, President
> /s/ Jeff Kuehl
> Jeff Kuehl, *Individually*
>
> . . . .

(Emphasis added.)

Our interpretation of the signatures on the contract has support from other authorities. *See* Arthur Linton Corbin, *Corbin on Contracts* § 2.10, at 174 (Joseph M. Perillo ed., rev. ed. 1993) ("One who signs a writing which purports to be a contract does an act that is strong evidence of one's intention to make oneself a party thereto bound as a promisor and entitled as a promisee."); *In re Brownwood Distilling Co.,* 32 B.R. 54, 56 (Bankr.W.D.Okla.1983) (Court stated that, if defendant had signed the counteroffer in both defendant's individual and corporate capacity, as defendant had signed the original offer, defendant would have been personally liable on the agreement.); *Ristvedt,* 311 N.W.2d at 577 (Court held defendant who not only signed in his corporate capacity but also in his individual capacity without using the word "by" before his signature personally obligated on the contract.); *see also Emala v. Walter G. Coale, Inc.,* 244 Md. 159, 162, 223 A.2d 177, 179 (1966) ("Where individuals subscribe their proper names to a promissory note, prima facie, they are personally liable."); *Dynamic Homes, Inc. v. Rogers,* 331 So.2d 326, 328, 329 (Fla.Dist.Ct.App.1976)

(Individuals who "signed [the promissory note] individually with specificity and then signed the note again with their signatures preceded by the word 'by,'" were personally obligated on the note.).

Other evidence supports the trial court's finding and conclusion that the parties intended Kuehl to be personally obligated on the contract. In addition to the admissions by plaintiffs in the pleadings, there was testimony in substance that the purchase agreement was between Kuehl and Gateway on the one hand and Freeman Brothers on the other.

Also, the separate clause, paragraph 10, concerning the covenant not to compete did not have any proviso limiting Kuehl's individual signature or obligation on the contract to just that clause. Correspondingly, Kuehl's individual signature at the end of the purchase agreement did not make reference to paragraph 10 only. Under such circumstances, Kuehl is "bound by the unconditional, unqualified undertaking manifested by his signature at the bottom of the contract, regardless of his secret reservations about the extent of his commitment." *Otto Contracting Co. v. S. Schinella & Son, Inc.,* 179 Conn. 704, 708, 427 A.2d 856, 857 (1980) (Since plaintiff refused to work until plaintiff received personal commitment from the defendant owner, court rejected defendant owner's argument that defendant owner's signature only represented his acquiescence to an approval clause in the contract.).

Based on the whole record, the trial court concluded:

> Kuehl was well aware that he would be responsible for any claims for business transacted prior to March 1, 1987, and that he was responsible to keep malpractice insurance (tail insurance) in effect for any such earlier negligent acts or omissions.

In response to plaintiffs' Iowa rule of civil procedure 179(b) motion raising the individual liability issue, the trial court stated that "[b]oth named [counterclaim] defendants [Kuehl and Gateway] were obligated under the terms of the written contract."

The evidence showed all parties entered the purchase agreement largely because the

parties knew plaintiffs had been having problems losing contracts with insurance companies and Kuehl personally had been misrepresenting the conditions of insureds to those companies. Freeman Brothers was generally aware of these actions. Kuehl also was the sole owner of Gateway. It was therefore entirely reasonable under the circumstances that the parties would have agreed and intended that Kuehl personally, as well as Gateway, would be bound to the provisions of the agreement. The trial court impliedly so found.

By signing the contract in his individual as well as in his representative capacity, Kuehl clearly manifested an intent to be personally bound to its terms. We agree with the trial court's decision that the fact that the errors and omissions clause refers only to "SELLER" has no bearing on the intent reflected in Kuehl's individual signature at the end of the document.

Moreover, because the question of intent is a factual issue, we are bound by the trial court's finding if substantial evidence supports it. Iowa R.App.P. 14(f)(1); *see Albert v. Davenport Osteopathic Hosp.*, 385 N.W.2d 237, 239 (Iowa 1986). As shown, substantial evidence supported the court's finding that the contract also holds Kuehl personally liable.

VI. *Conclusion.* Finding no merit in any of Kuehl and Gateway's assignments of error, we affirm the trial court's judgment in all respects.

**AFFIRMED.**