# IN THE COURT OF APPEALS OF IOWA

No. 14-1625
Filed July 22, 2015

**JERRY'S HARDWARE, L.L.C.,**
      Plaintiff-Appellee/Cross-Appellant,

**vs.**

**HILLCREST PARTNERS, a general partnership,
CHARLES A. RUHL JR., and STEVEN FRY,**
      Defendant-Appellants/Cross-Appellees.
_____

Appeal from the Iowa District Court for Scott County, Marlita A. Greve (Settlement Conference; First and Second Motions to Continue), J. Hobart Darbyshire (Third Motion to Continue), Henry Latham (Fourth Motion to Continue), and Mary E. Howes (Trial and Post-Trial Motions), Judges.

Hillcrest Partners, Charles Ruhl, and Steven Fry appeal the district court's ruling awarding Jerry's Hardware, L.L.C. damages after breach of the parties' lease agreement. **AFFIRMED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Gary D. McKenrick of Cartee & McKenrick, P.C., Davenport, for appellants.

Elliott R. McDonald III and Ryan F. Gerdes of McDonald, Woodward & Carkson, P.C., Davenport, for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

Hillcrest Partners, Charles Ruhl, and Steven Fry (collectively "Hillcrest") appeal the district court's ruling awarding Jerry's Hardware, L.L.C. ("Jerry's") damages after Hillcrest's breach of the parties' lease agreement. Jerry's cross-appeals the denial of two categories of claimed damages.

### I. Factual and Procedural Background

On June 29, 2009, Jerry Richard, the owner of Jerry's, and Hillcrest signed a letter of intent to lease a retail unit of Hillcrest's upcoming Crown Ridge Plaza (Phase II) construction project. Jerry intended to rent a unit in which he would open an Ace Hardware store. The parties entered into a lease agreement on October 1, 2009. The lease agreement included the following terms:

3.
TERM

. . . The "Commencement Date" of the Term of this Lease shall be the date of substantial completion of the Premises . . . , which is expected to be on or about March 5, 2010. In the event the Premises is not substantially completed by such date, Tenant shall receive one (1) day of abated Base Rent for each day after March 5, 2010 until the Premises is substantially completed. In the event the Premises is not substantially completed on or prior to March 12, 2010, Tenant shall receive two (2) days of abated Base Rent for each day after March 12, 2010, until the Premises is substantially completed. . . .

. . . .

38.
CONDITIONS PRECEDENT

The parties' performance and obligations under this Lease are subject to the following conditions [precedent]:

A) The Landlord's acceptance shall be subject to the Landlord securing financing for Crow Ridge Phase II at terms acceptable to Landlord on or before September 1, 2009.[1]

---

[1] The deadlines and the conditions were incorporated directly from the letter of intent. The deadlines had passed when the lease itself was signed. If any of the conditions

B) The Tenant's acceptance shall be subject to Tenant securing financing for Tenant's business need at terms acceptable to Tenant on or before September 1, 2009.

C) The Tenant's acceptance shall be subject to Tenant's approval by Ace Hardware Corporation to operate an Ace Hardware store in the premises on or before August 2, 2009.

The parties agree to use all commercially reasonable efforts in satisfying the above conditions. If any of the conditions are not satisfied or waived on or before the dates set forth above, this Lease may be terminated by such party upon written notice to the other.[2]

After signing the lease agreement, Jerry began to make arrangements to move into the leased space by developing the store's floor plan with Ace Hardware representatives and by purchasing fixtures, equipment, and inventory for the store at a lump sum cost of $100,000. Jerry made Hillcrest aware of the impending purchases at the time the parties entered into the lease. The fixtures, equipment, and inventory were put in storage pending the completion of construction.

Hillcrest never began construction. On May 14, 2010, Jerry sent a letter through his attorney to Hillcrest requesting an explanation for Hillcrest's failure to begin construction. The letter explicitly noted Jerry was "not interested in exercising his option to terminate the lease." Hillcrest did not respond to the letter. On September 7, 2010, Jerry sent a second letter through his attorney to Hillcrest itemizing his losses resulting from Hillcrest's failure to perform. Hillcrest

---

were not met, the parties were permitted to terminate their agreement but not contractually prohibited from entering into the lease agreement on October 1, 2009.

[2] Because this clause is expressly permissive, the three conditions in the lease are not in fact conditions precedent, which are not permissive, in spite of the lease's misuse of the legal term. *See Khabbaz v. Swartz*, 319 N.W.2d 279, 284 (Iowa 1982) ("Nonperformance of a condition precedent vitiates a contract or a proposed contract.").

did not respond to the second letter.[3]  Nor did Hillcrest exercise its option to terminate the agreement.

Jerry eventually leased an alternate location on January 20, 2012, to "mitigate [his] losses."  The new location is less visible and sees less incidental traffic than the planned Crown Ridge Plaza location.  Additionally, the Crown Ridge Plaza location was to be constructed according to particular electrical specifications to support Ace Hardware requirements.  When Jerry leased the new location, he was required to pay out-of-pocket to have the location's electrical system retrofitted to match those requirements at an expense of $26,000.

Some of the fixtures, equipment, and inventory that Jerry had purchased in anticipation of a March 2010 opening did not comply with Ace Hardware's requirements for new stores in 2012.  Jerry was required to purchase a new paint system at an expense of $9000 and new signage, shelving, point of sale systems, and other equipment at a cost of $38,666.28.  He had also paid unanticipated storage costs starting on March 5, 2010, when he had planned on removing his inventory from storage and moving it into the Crown Ridge Plaza location.  The additional storage lasted nearly two years and cost Jerry $26,778.49.

Jerry's filed suit against Hillcrest on January 2, 2013.  A bench trial was scheduled for December 10, 2013.  Hillcrest filed a motion to continue the trial on

---

[3] Hillcrest sent a letter to Jerry to "update [him] on the positive progress" made on the Crow Ridge Plaza project.  The letter does not substantively respond to either of Jerry's letters.  Hillcrest's letter is not dated, but the substance of the letter indicates it was sent after November 1, 2010.

October 21, 2013, claiming it had some indication from Jerry's that it might not continue to pursue the action.[4] On November 7, the district court denied the motion, but it did continue discovery deadlines to allay the concerns of Hillcrest's counsel. On November 14, 2013, Hillcrest's counsel moved to withdraw from the case after a previously unnoticed conflict of interest came to light. At the same time, Hillcrest moved again to continue the trial. On November 19, the district court granted the motion to withdraw but denied the motion to continue, finding, "Defendants still have enough time and have had enough time to obtain other legal counsel and proceed with this case, which is relatively uncomplicated." Hillcrest waited until December 2—nearly two weeks after the district court's most recent denial of a continuance—to first meet with the counsel that it ultimately retained for trial. Hillcrest's new counsel filed a third motion to continue on December 3, 2013. The district court denied the motion. On December 10, the day of trial, Hillcrest again moved for a continuance. Hillcrest's counsel argued in support of the motion, "I am simply not prepared to adequately defend the Defendants in connection with this litigation." The district court granted the fourth motion to continue and continued the trial to January 31, 2014.

A bench trial took place over two days, January 31 and February 13, 2014. The only witness testimony came from Jerry, his wife, Ruhl, and Fry. The

---

[4] Jerry's concedes its counsel made a "passing remark" in May 2013 that Jerry's might not pursue the action if Hillcrest returned its $10,000 deposit. However, Hillcrest did not return the deposit as requested, and it in fact retained the deposit until the court ordered it to return the money to Jerry's. These circumstances do not excuse Hillcrest's claimed failure to prepare for trial as scheduled.

district court found Hillcrest had breached the lease agreement and Jerry's was entitled to $100,444.77 in damages, the sum of the unexpected storage costs, the costs of retrofitting the electrical system in the new location, the cost of the new paint system, and the cost of other new equipment.

Hillcrest appeals, claiming the district court abused its discretion in thrice denying its motions for continuance, the district court erred in concluding the lease agreement was enforceable, and the district court erred in finding the damages awarded were caused by the alleged breach. Jerry's cross-appeals, claiming the district court erroneously denied its request to award liquidated damages arising from the rent-abatement clause of the lease and the district court erroneously denied its claim for damage to stored equipment, inventory, and fixtures.

## II. Standards of Review

We review the denial of a motion for continuance for an abuse of discretion. *Hawkeye Bank & Trust, Nat'l Ass'n v. Baugh*, 463 N.W.2d 22, 26 (Iowa 1990). A district court abuses its discretion only when it exercises that discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Hawkeye Bank & Trust Co. v. Michel*, 373 N.W.2d 127, 129 (Iowa 1985).

We review breach-of-contract actions for errors at law. *See Land O'Lakes, Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000). Matters of contract construction are reviewed at law. *See Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435–36 (Iowa 2008). All other claims on appeal and cross-appeal challenge the district court's award of damages arising from Hillcrest's breach of

contract. "The trial court's findings of fact have the effect of a special verdict and are binding if supported by substantial evidence." *Land O'Lakes*, 610 N.W.2d at 522; *see* Iowa R. App. P. 6.904(3)(a). "Evidence is substantial for purposes of sustaining a finding of fact when a reasonable mind would accept it as adequate to reach a conclusion." *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995).

### III. Claims on Appeal

Hillcrest raises three issues on appeal.

<u>A. Motions to Continue</u>

Hillcrest first claims the district court abused its discretion in denying multiple motions to continue the trial. We disagree. When a party moves to continue a trial, alleging a cause not stemming from the movant's own fault or negligence, the court must determine whether substantial justice will be more nearly obtained by granting the request. *Baugh*, 463 N.W.2d at 26.

As to the first motion to continue, the district court determined there was sufficient time before trial would commence—more than a month—for Hillcrest and its counsel to prepare. The court continued discovery deadlines to ensure the parties would be able to ready themselves for trial. As to the second motion, the parties still had three weeks to prepare for trial when the court denied the continuance. Substantial justice did not require a continuance in these circumstances in which the parties had sufficient preparation time before trial. Following the denial of the second motion, Hillcrest waited two weeks before meeting with its new counsel. In these circumstances, the district court acted

within its discretion in denying the third motion to continue. The district court did not abuse its discretion in denying any of these motions to continue trial.

Furthermore, Hillcrest's claim that the district court's denials of more time did not allow for "meaningful trial preparation" is undermined by the fact that the district court ultimately did grant a fifty-two day extension, giving Hillcrest and its counsel additional time to prepare. The district court did not abuse its broad discretion in its determinations on Hillcrest's multiple motions to continue the trial.[5]

### B. Enforceability of Lease Agreement

Hillcrest next claims the lease agreement was not enforceable. It claims none of the scheduled threshold conditions, labeled conditions precedent, were satisfied. However, the plain terms of the contract state, "If any of the conditions are not satisfied . . . this Lease may be terminated by such party upon written notice to the other." The nonsatisfaction of the conditions clearly vests in the parties a permissive right to terminate the contract in writing. The record is clear that neither party terminated the lease in writing. Jerry explicitly reserved his option not to terminate in the letter sent to Hillcrest through his attorney, and Hillcrest, even on appeal, maintains it "continued to pursue financing for the

---

[5] Hillcrest claims the abuse of discretion was manifest in its own failure to designate its expert witness according to the time-frame requirements or Iowa Rule of Civil Procedure 1.508(3). This assertion, along with Hillcrest's failure to retain counsel for two weeks following the denial of its second motion for continuance, are Hillcrest's efforts to ascribe its own dilatory tactics in this litigation to the district court. We find no evidence supporting Hillcrest's allegation of "the specter of bias or animus" from the district court. The denials of the first three motions to continue were the rulings of two different district court judges.

project." In our construction of the contractual language,[6] it is clear the unsatisfied financing conditions, even giving them full effect, do not render the lease unenforceable. Hillcrest need only have terminated the agreement as it was entitled to do if it did not want the lease to be enforced.

### C. Damages

Hillcrest lastly claims none of the damages awarded to Jerry's were caused by Hillcrest's breach of the lease. For damages to be recoverable, the loss must have resulted from the breach and have been in the contemplation of the parties when they entered into the agreement. *See Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 847 (Iowa 2010). "Damages which a reasonable person would expect to follow from a breach of a contract are direct and thus should be awarded." *Kuehl v. Freeman Bros. Agency, Inc.*, 521 N.W.2d 714, 718 (Iowa 1994). Loss is foreseeable if it follows from the breach "in the ordinary course of events" or "as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know." *See Royal Indem. Co.*, 786 N.W.2d at 847 (quoting Restatement (Second) of Contracts § 351, at 135 (1981)).

The district court awarded Jerry's four categories of damages. First, it awarded $26,000 for the electrical system upgrade in the new location leased in 2012. Hillcrest itself concedes, "No dispute exists that the lease agreement between Hillcrest and Jerry's Hardware called for Hillcrest to build a facility specific to the requirements of Ace for Jerry's Hardware, including some very

---

[6] "[C]onstruction of a contract is the process a court uses to determine the legal effect of the words used." *Pillsbury Co.*, 752 N.W.2d at, 435–36.

specific electrical requirements." It was therefore foreseeable that Jerry would incur additional expenses conforming to Ace Hardware's specific electrical requirements in the event he had to open the store in an alternate location. There is substantial evidence to support the finding that Hillcrest's breach caused these damages.[7]

The next two categories of damages—$9000 for a new paint system and inventory and $38,666.28 for updated signage, shelving, and other equipment— were additional costs incurred by Jerry to replace equipment purchased but not used due to the delay in opening his store.[8] These costs were incurred because the systems and equipment, while current and usable in 2010, were not current and usable when opening a new store in 2012. Hillcrest alleges, "[O]bsolescence due to passage of time would have occurred without regard to any conduct of Hillcrest." However, it fails to realize the items that became "obsolete" would have seen nearly two years of commercial use if the store had opened in early 2010 as planned. The district court found, "[I]f the store had opened when promised, [Jerry] would have been able to use the old [paint] samples and machinery." The same is true of the other equipment.

Jerry made Hillcrest aware at the time of the lease that Jerry's purchase of inventory and equipment would take place soon and that the installation and

---

[7] Hillcrest suggests that "based on the grossly lower rental cost of the [new] leasehold, the electrical upgrade cost already is factored into the equation." We reject this notion. The lower rental cost accounts for the characteristics of the new leasehold's property, including its location, *independent of* Jerry's out-of-pocket expense of retrofitting an electrical system into the new storefront.

[8] Neither party argued at trial that the better measure of damages was the cost of the used equipment that remained in storage until the passage of time made it obsolete. The record does not contain the itemized cost of the used paint system and electronics eventually replaced.

commercial utility of the inventory and equipment was time sensitive. Hillcrest was further put on notice of the particular circumstances leading to these damages soon after its failure to complete construction on time. Jerry, through his attorney, sent a letter to Hillcrest on May 14, 2010, making Hillcrest aware of "significant incentives from the Ace Hardware company" and Jerry's "reasonable expectation that his business would now be open." After receiving no response from Hillcrest, Jerry, through his attorney, sent Hillcrest a second letter on September 7, 2010, detailing the costs of the inventory and equipment, which were total losses without a storefront to host them. The letters served to reiterate the importance of Hillcrest's timely performance in relation to Jerry's inventory and equipment purchases and put Hillcrest on notice that its ongoing failure to perform was marginalizing the value of those purchases.

There is substantial evidence in the record supporting the district court's findings that these damages were caused by Hillcrest's breach and were foreseeable based on Hillcrest's knowledge of the particular circumstances surrounding Jerry's time-sensitive purchase of the equipment.[9]

Lastly, the district court awarded $26,778.49 for the costs of renting storage space for the fixtures, equipment, and inventory. Hillcrest knew at the time it entered into the lease agreement that Jerry was imminently purchasing an inventory in preparation for the March 5, 2010 completion date. Jerry stressed to

---

[9] We disagree with Hillcrest that Jerry was required to mitigate his damages by liquidating his inventory. It is true a party asserting a breach of contract has a duty to mitigate its damages. *See Kuehl*, 521 N.W.2d at 719. However, it was not a reasonable mitigation tactic for Jerry to liquidate the entire inventory—he still planned to open the store either when Hillcrest completed construction or in an alternate venue.

Hillcrest at the time of the lease agreement that the inventory purchase was substantial and the completion of construction on time was important due to the timing of the purchase. It was foreseeable that Jerry would be required to continue paying storage costs until Hillcrest built the promised store or a suitable alternate location was secured. Substantial evidence supports the district court's finding that Hillcrest's breach was the cause of the additional storage expenses.[10]

We affirm all damages awarded by the district court.

**IV. Claims on Cross-Appeal**

Jerry's raises two issues on cross-appeal.

A. Rent Abatement

First, Jerry's claims it is entitled to $396,835.04 in liquidated damages pursuant to the rent abatement clause in the lease agreement. This claim requires us to undergo a contract construction analysis to determine the legal effect of the terms in the contract. *See Pillsbury Co.*, 752 N.W.2d at 435–36. The rent abatement clause provides for one day of abated rent per day from March 6, 2010, to March 12, 2010, and two days of abated rent per day from March 13, 2010, for every day that construction is not completed. Jerry's calculates it is owed 768 days of rent-free tenancy—abated rent accrued from March 5, 2010, the anticipated move-in date, through April 18, 2012, when

---

[10] On appeal, Hillcrest claims one element of the storage expenses was patently not caused by its breach of the lease agreement: pick-up and delivery costs. There is no indication in the record that the costs paid for pick-up and delivery of the stored goods would have been any different if Jerry had put the materials in storage and removed them on March 5, 2010, as he initially intended. However, Hillcrest did not present this argument to the district court at trial or in its post-trial motion to enlarge or amend. "[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Hillcrest as failed to preserve error on the issue of pick-up and delivery costs.

Jerry's opened its store in the alternative location. Because Jerry's cannot occupy the intended retail space, it now argues it is entitled $396,835.04—the value of 768 days of rent under the lease agreement.

Jerry's sole citation to support its theory of rent abatement does not in fact support its position. *See Bates Adver. USA, Inc. v. 498 Seventh, L.L.C.*, 850 N.E.2d 1137, 1139–40 (N.Y. 2006) (characterizing a rent abatement clause as "liquidated damages," but nevertheless affirming their award as "credits . . . against which to offset future rent payments"). We find no authority for the proposition that rent abatement can be transformed into monetary damages, and we are not persuaded by the characterization of rent abatement espoused by Jerry's—that it "negotiated for the receipt of rent value if Hillcrest failed to make available the premises." While the rent abatement clause is the agreed upon measure of damages for a delayed move-in by Jerry's, it does not apply as a measure of damages for Hillcrest's failure to build any building at all. Iowa's limited case law addressing rent abatement considers abatement under its common definition, as a deduction in an amount owed to a lessor, not an affirmative value owed by the lessor to the lessee. *See Schick v. Davenport Realty Co.*, 205 N.W. 782, 783 (Iowa 1925); *see also Woodbury Co. v. Dougherty & Bryant Co.*, 143 N.W. 416, 418 (Iowa 1913). The district court properly denied this claim.

### B. Additional Damages Claims

Second, Jerry's argues the district court erred in denying its claims for damaged inventory and fixtures. Some of the items Jerry stored were damaged due to their exposure to extreme weather through two summers and two winters.

The district court declined to award Jerry's the lost value of the goods resulting from damage during storage, finding that Jerry's failed to mitigate these damages when it failed to store the items in an appropriate setting that would not expose them to the elements. "A person asserting breach of contract has a duty to mitigate the damages." *Kuehl*, 521 N.W.2d at 719. The record supports the district court's conclusion that Jerry's decision to continue to store the items in a location that would expose them to damage was a failure to mitigate his damages. Though Jerry testified that storing the items in a climate-controlled facility would have been more expensive, it was incumbent on him to prevent damage to the items rather than let them deteriorate. Jerry's could then recover the costs of storage—to which it is entitled—from Hillcrest.

We do not agree with Hillcrest's assertion that the principle requiring Jerry's to mitigate its damages necessitated liquidation of the stored materials, but we do agree with the district court that the principle necessitated efforts to store the materials in an appropriate setting. We affirm the district court.

### V. Conclusion

The district court did not abuse its discretion in its determinations on Hillcrest's multiple motions to continue the trial. The court properly determined the lease agreement was enforceable between the parties. We affirm the damages awarded by the district court. As to the cross-appeal, the district court properly rejected the request to convert the rent abatement clause to monetary damages. It properly rejected the claim for damages that occurred because Jerry's failed to reasonably mitigate its damages. We affirm.

**AFFIRMED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**