**MAGNUSSON AGENCY and Michael Magnusson, Appellants,**

v.

**PUBLIC ENTITY NATIONAL COMPANY–MIDWEST d/b/a PENCO, Appellee.**

No. 95–1306.

Supreme Court of Iowa.

Feb. 19, 1997.

Rehearing Denied March 26, 1997.

James L. Kramer, Susan L. Ahlers, and Neven J. Mulholland of Johnson, Erb, Bice, Kramer, Goode & Mulholland, P.C., Fort Dodge, for appellants.

Brian L. Yung and Mark R. Crimmins of Bennett, Crimmins and Yung, Fort Dodge, for appellee.

Considered by LARSON, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Plaintiffs Magnusson Agency and Michael Magnusson (collectively referred to as Magnusson), sued Public Entity National Company–Midwest (PENCO) for breach of contract and fraudulent misrepresentation, requesting both compensatory and punitive damages. Magnusson claimed that PENCO should have awarded its bid to obtain Webster County's insurance to him, not another agent. The jury awarded damages totaling $180,000. After judgment was entered on the verdicts, PENCO filed a motion for judgment notwithstanding the verdict (JNOV) and a motion for new trial. The district court granted the motions. On appeal, we find there is substantial evidence to support the jury's verdict that PENCO breached a contract with Magnusson, and the judgment on the verdict should not be vacated. However, we agree with the district court that there is insufficient evidence to support the jury verdict on the fraudulent misrepresentation and the punitive damages claims. We affirm in part, reverse in part, and remand.

I. *Background Facts and Proceedings.*

The following facts are essentially undisputed: Magnusson is the owner of Magnusson Agency in Fort Dodge, Iowa, and has been in the insurance business since 1978. Magnusson Agency is an independent insurance agency, meaning it represents more than one insurance company. In 1987, Magnusson began providing public entity insurance to Webster County, through North-

western National Casualty Company. This continued until 1992.

In the fall of 1992, Webster County decided to seek bids for its 1993–1995 insurance. The county hired a consultant to obtain and compile the necessary information, assemble a bid package, and release it to agents who wanted to submit bids for the county's insurance. To become involved in the bidding process, the insurance agents had to deliver the bid packages and applications to the insurance companies for preparation of bids. When an insurance company finished preparing a bid, the agent could then present it to the county. These price quotations had to be presented to the county by early December 1992.

As the renewing insurance company, Northwestern National automatically gave Magnusson its bid. Magnusson also wanted to present the bid of PENCO, a company that works exclusively through independent insurance agents. PENCO has no insurance agents of its own. Even though Magnusson had never worked with it before, he had been in contact with PENCO's representatives at previous insurance conventions.

On October 22, Magnusson called PENCO to find out what he needed to do to secure a bid from it. He asked to speak to the person in charge of public entity insurance and was referred to Barb Dale, PENCO's marketing representative. Magnusson specifically asked Dale what was necessary for him to obtain a bid from PENCO. Dale told Magnusson that the first agent to provide PENCO with a completed application, including the county's budget and a signature by an appropriate county official, would receive its bid. This was PENCO's policy and procedure.

With this information, Magnusson began working on the application. On that same day, he met with the county auditor, the county engineer, the sheriff, and the conservation officer. He also made inspections of all the necessary sites. After completing the application, he took it back to the county auditor, who reviewed it, signed the application, and gave him a copy of the county budget. Magnusson then forwarded his application to PENCO's office in Omaha, Nebraska, via Airborne Express. PENCO received the application at 8:33 a.m. on October 23.

Magnusson received a letter, dated October 26, from Curtis Weible, PENCO's state manager. The letter was accompanied by Magnusson's application. It indicated that Weible received a completed application on October 23 during his travels in Iowa, prior to receiving Magnusson's application. The other application belonged to Peter Holt. Holt had worked with PENCO before and visited with Weible and PENCO as early as March 1992 to discuss securing the bid for Webster County.

In December, Webster County accepted PENCO's bid presented by Holt. The coverage period was three years, and the commissions paid to Holt exceeded $55,000. In November 1993, Magnusson sued PENCO for breach of contract and false misrepresentation. He also sought punitive damages. Magnusson claimed that he was the first agent to submit a completed application and that PENCO breached an oral contract by not awarding its insurance bid to him. Magnusson also claimed that PENCO made a fraudulent misrepresentation to him because it never intended to work with any agent other than Holt on the Webster County bid.

A jury trial began on June 13, 1995. Among other things, the evidence revealed that, despite Weible's letter to Magnusson stating otherwise, Holt's application was not received by PENCO prior to Magnusson's. Further, Holt's application was not signed by a county official, it did not include a budget, and it did not contain the required bid specifications. In addition, contrary to its company policy, PENCO photocopied Magnusson's application before returning it to him.

The district court denied PENCO's motions for directed verdict, and the jury returned a verdict in favor of Magnusson on both claims. The jury awarded $25,000 for the breach of contract and $30,000 for the fraudulent misrepresentation. In addition, the jury awarded $125,000 in punitive damages.

PENCO filed a motion for JNOV and, in the alternative, a motion for new trial. The

district court granted PENCO's motion for JNOV, stating it failed to find substantial evidence to support Magnusson's claims for breach of contract, false misrepresentation, and punitive damages. Pursuant to Iowa Rule of Civil Procedure 248, the court also conditionally granted PENCO's motion for new trial. Magnusson filed timely notice of appeal.

## II. Scope of Review.

■ We review the district court's grant or denial of a motion for JNOV for the correction of errors at law. Iowa R.App. P. 4; *Bredberg v. Pepsico, Inc.*, 551 N.W.2d 321, 326 (Iowa 1996). We view the evidence in the light most favorable to the party against whom the motion was made, taking into consideration every legitimate inference that may fairly and reasonably be made. Iowa R.App. P. 14(f)(2); *Bredberg*, 551 N.W.2d at 326. The motion must stand or fall on the grounds raised in the motion for directed verdict. *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996).

■ Our only inquiry is whether there is sufficient evidence to justify submitting the case to the jury. *Bredberg*, 551 N.W.2d at 326. The motion should be denied if there is substantial evidence to support each element of the plaintiff's claims. *Id.* Evidence is substantial when a reasonable mind would find the evidence presented adequate to reach the same findings. *Willey v. Riley*, 541 N.W.2d 521, 526 (Iowa 1995).

## III. Breach of Contract.

Magnusson's first claim is that the district court erred in granting PENCO's motion for JNOV on the breach-of-contract claim. The court found that Magnusson was not specifically promised anything and that no offer was made by PENCO. Magnusson argues that he presented substantial evidence upon each element of his claim, warranting its submission to the jury. We agree.

Consistent with Iowa Civil Jury Instruction 2400.1 (1986), the district court instructed the jury that Magnusson had to prove all of the following propositions on the breach-of-contract claim:

1. The parties were capable of contracting. Specifically, that Defendant's agent or employee, Barb Dale, had authority to bind Defendant to a contract with Plaintiffs.

2. A contract existed between the Plaintiffs and Defendant.

3. Consideration.

4. The terms of the contract.

5. The Plaintiffs performed what the contract required the Plaintiffs to do.

6. The Defendant breached the contract.

7. The Plaintiff has suffered damages as a result of the Defendant's breach.

■ Here, we are dealing with a unilateral contract, which consists of an offeror making a promise and an offeree rendering some performance as acceptance. *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 283 (Iowa 1995); *Hunter v. Board of Trustees*, 481 N.W.2d 510, 513 (Iowa 1992). As with any contract, the party seeking recovery on the basis of a unilateral contract has the burden of proving the existence of a contract. *Anderson*, 540 N.W.2d at 283.

### A. Capacity to Contract.

■ The first essential element of a contract is that the parties have the capacity to contract. 17A Am.Jur.2d *Contracts* § 23, at .51 (1991); Restatement (Second) of Contracts § 12(1) (1981). Magnusson claims that Dale had actual or apparent authority to act on behalf of her employer. PENCO, however, claims that Dale did not have authority to bind it to a contract. A fundamental principle of agency law is that whatever an agent does, within the scope of his or her actual authority, binds the principal. *Dillon v. City of Davenport*, 366 N.W.2d 918, 924 (Iowa 1985). In addition, all acts and contracts of an agent, which are within the apparent scope of authority conferred on him or her, are also binding upon the principal. *FS Credit Corp. v. Troy Elevator, Inc.*, 397 N.W.2d 735, 740 (Iowa 1986) (relying on *Mayrath Co. v. Helgeson*, 258 Iowa 543, 548, 139 N.W.2d 303, 306 (1966)).

■ Apparent authority is authority which, although not actually granted, has

been knowingly permitted by the principal or which the principal holds the agent out as possessing. *Id.* (relying on *Helgeson,* 258 Iowa at 548, 139 N.W.2d at 306). Apparent authority must be determined by what the principal does, rather than by any acts of the agent. *Waukon Auto Supply v. Farmers & Merchants Sav. Bank,* 440 N.W.2d 844, 847 (Iowa 1989).

We believe there is substantial evidence that Dale had authority to make statements and representations on behalf of PEN-CO. Clearly, Dale had the authority to tell Magnusson that, according to written administrative procedures, the first agent to submit a completed application, along with the county's budget and an official signature, would be the agent who would receive PENCO's bid for the insurance. PENCO even admits that Dale had authority to make these statements concerning company policy. Because Dale had the capacity to contract, the next question is whether her statement constituted an offer of a unilateral contract.

B. Offer and Acceptance.

All contracts must contain mutual assent. *Anderson,* 540 N.W.2d at 285. This assent is usually given through an offer and acceptance. An offer is a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his [or her] assent to that bargain is invited and will conclude it." *Id.* (quoting Restatement (Second) of Contracts § 24). We look for the existence of an offer objectively, not subjectively. *Id.*

The test for an offer is whether it induces a reasonable belief in the recipient that he or she can, by accepting, bind the sender. *Id.* at 286. If an offer is not definite, there is no intent to be bound. *Id.* In other words, when dealing with a unilateral contract, the offeree's performance "must have been induced by the promise made." *Id.* at 284 (quoting *St. Peter v. Pioneer Theatre Corp.,* 227 Iowa 1391, 1401, 291 N.W. 164, 169 (1940)).

Magnusson claims there was substantial evidence of the existence of an offer. He argues that Dale's statement induced a rea-

sonable belief in him that he could, by accepting the offer and delivering the first completed application, bind PENCO. We agree.

In response to Magnusson's questioning about what he needed to do to receive PEN-CO's bid, Dale told him that PENCO would offer its bid to the agent who submitted the first completed application. A reasonable person could conclude that PENCO intended to be bound by Dale's statements, and that it would follow its own written policies and procedures. Not only did Magnusson submit the first application, he also submitted a complete application. In contrast, Holt's application was received later and was not even close to being complete.

In addition to the requirement that there be a definite intent to be bound, an offer must also be certain as to its terms and requirements. *See Audus v. Sabre Communications Corp.,* 554 N.W.2d 868, 871 (Iowa 1996); 17A Am.Jur.2d *Contracts* § 192, at 202. We believe the terms of PENCO's offer were sufficient to determine with certainty the promises and performances to be rendered by each party. *See Burke v. Hawkeye Nat'l Life Ins. Co.,* 474 N.W.2d 110, 113 (Iowa 1991). The terms of the contract were very simple: Magnusson would service the Webster County account for the three-year period, and PENCO would pay him a commission for his services. It is not significant that Magnusson did not discuss the specific amount of his commission during his phone conversation with Dale.

A binding contract also requires acceptance of the offer. 17A Am.Jur.2d *Contracts* § 66, at 91. An offer that invites an acceptance by performance is deemed accepted by such performance unless there is a manifestation of intention to the contrary. *Id.* § 100, at 117. There is no dispute that Magnusson accepted PENCO's offer by preparing and delivering the first complete, signed application to PENCO.

C. Consideration.

Another essential element of any binding contract is consideration. *Dullard v. Schafer,* 251 Iowa 274, 281, 100 N.W.2d 422,

427 (1960). Consideration constitutes either a benefit to the promisor or a detriment to the promisee. *In re Marriage of Farr*, 542 N.W.2d 828, 832 (Iowa 1996). Consideration may consist of a performance or a return promise, and it must be "bargained for." *Id.*; Restatement (Second) of Contracts § 71(1). Any performance which is bargained for is consideration. Restatement (Second) of Contracts § 72. A performance is bargained for if it is sought by the promisor in exchange for his or her promise and is given by the promisee in exchange for that promise. *Id.* § 71(2).

Magnusson clearly provided the required performance by completing the application and sending it to PENCO. Further, this performance was bargained for because of Magnusson's phone conversation with Dale. She extended an offer with her statement and, by delivering the first application, Magnusson provided the performance that PENCO sought.

### D. Breach of Contract.

A breach of a contract is a party's failure, without legal excuse, to perform any promise which forms a whole or a part of the contract. 17A Am.Jur.2d *Contracts* § 716, at 727. Because we have already determined there was sufficient evidence that a unilateral contract existed between Magnusson and PENCO, it is undisputed that PENCO breached its contract. Even though Magnusson submitted the first completed application, PENCO offered its bid to Holt. PENCO's breach entitles Magnusson to recover damages. *Id.* § 725, at 736.

### E. Damages.

In Iowa, when a contract has been breached, the non-breaching party is generally entitled to be placed in a position that he or she would have occupied had there been performance. *Yost v. City of Council Bluffs*, 471 N.W.2d 836, 840 (Iowa 1991). In other words, these "benefit-of-the-bargain" damages are intended to provide a sum of money that will put the non-breaching party in the position that he or she would have been if the contract had not been breached. *See* 22 Am.Jur.2d *Damages* § 45, at 68–69

(1988). The focus of Iowa law is foreseeability of the type of damage. *Kuehl v. Freeman Bros. Agency, Inc.*, 521 N.W.2d 714, 718 (Iowa 1994). In *Kuehl*, we stated:

> damages based on breach of a contract must have been foreseeable or have been contemplated by the parties when the parties entered into the agreement.... Damages which a reasonable person would expect to follow from breach of a contract are direct and thus should be awarded.

*Id.* (citations omitted).

Here, benefit-of-the-bargain damages are appropriate, because if PENCO had not breached the unilateral contract, Magnusson would have submitted the successful insurance bid to Webster County and would have received commissions for three years. He would have received the commissions for servicing the account, which would have involved his time and expense. These damages were certainly foreseeable and, in fact, are the only damages involved in this claim. The jury award did not exceed the total commission paid to Holt.

We conclude there was sufficient evidence to justify submitting the breach-of-contract claim to the jury. PENCO's motion for JNOV should have been denied because substantial evidence supports each element of Magnusson's claim.

### IV. *Fraudulent Misrepresentation Claim.*

Next, Magnusson argues that the district court erred in granting PENCO's motion for JNOV on the fraudulent misrepresentation claim. In its ruling on the motion, the court stated that the elements of falsity, scienter, and intent were not supported by substantial evidence. Magnusson asserts that he presented substantial evidence that PENCO committed fraud by allowing Dale to make promises it had no intention of honoring. We disagree.

On this claim, the district court instructed the jury, consistent with Iowa Civil Jury Instruction 810.1 (1987), that Magnusson had to prove all of the following:

1. The Defendant on or about October 22, 1992, made a representation to Plain-

tiffs that Defendant would only provide a quote to the independent agent who provided Defendant with the first signed, completed application, and budget for insurance.

2. The representation was false.

3. The representation was material.

4. The Defendant knew the representation was false.

5. The Defendant intended to deceive Plaintiffs.

6. The Plaintiffs acted in reliance on the truth of the representation and were justified in relying on the representation.

7. The representation was a proximate cause of the Plaintiffs' damage.

8. The amount of damage.

See *Hyler v. Garner*, 548 N.W.2d 864, 871 (Iowa 1996). The court correctly instructed the jury that each of the seven elements must be established by a preponderance of clear, satisfactory, and convincing evidence. *McGough v. Gabus*, 526 N.W.2d 328, 331 (Iowa 1995); *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 565 (Iowa 1987).

■ We conclude that Magnusson has not satisfied all the elements of this claim. The first three elements require that a material misrepresentation must have been made. In *Clark v. McDaniel*, 546 N.W.2d 590 (Iowa 1996), we stated:

a misrepresentation may occur when one with superior knowledge, dealing with inexperienced persons who rely on him or her, purposely suppresses the truth respecting a material fact involved in the transaction.

*Clark*, 546 N.W.2d at 592 (quoting *Kunkle Water & Elec., Inc. v. City of Prescott*, 347 N.W.2d 648, 653 (Iowa 1984)). Clearly, Dale made a representation and it was material. She told Magnusson that he would get PENCO's bid if he submitted the first completed application. The representation was material because it influenced Magnusson enough to spend several hours preparing the application on the same day he talked to Dale. He did this in order to have the best chance to submit the first application.

However, Magnusson has not offered sufficient evidence to prove that the representation was false. To satisfy this element, "it is necessary to establish that the representation was false *at the time it was relied upon.*" *Hagarty v. Dysart–Geneseo Community Sch. Dist.*, 282 N.W.2d 92, 95 (Iowa 1979) (emphasis added). Even though PENCO later offered its bid to the second applicant, that fact alone is not enough to show that the earlier representation was false. To the contrary, Dale testified that she was stating company policy and procedures.

A fraudulent misrepresentation claim also requires that the defendant knew the representation was false (scienter), and that the defendant intended to deceive the plaintiff. *See McGough*, 526 N.W.2d at 331–32. We conclude there was insufficient evidence to satisfy either element.

■ Scienter is knowledge of the falsity of a material representation. *Hyler*, 548 N.W.2d at 871. It can be proved by showing that the defendant had actual knowledge of the falsity, possessed reckless disregard for the truth, or falsely stated or implied that the representations were based on personal knowledge or investigation. *Id.* Intent to deceive is closely related to scienter, and the same general analysis applies. *Hyler*, 548 N.W.2d at 871; *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984).

■ Here, the representation involved Dale's statement that PENCO would perform a future act. In *Robinson*, we held that a statement of intention to perform a future act is actionable if, when made, the speaker had an existing intention not to perform. *Robinson*, 412 N.W.2d at 565. However, in establishing intent, the fact that an agreement was not performed does not alone prove that the promisor did not intend to keep the promise when it was made. *Id.* In other words, a false statement innocently but mistakenly made will not establish intent to defraud unless the statement was recklessly asserted. *McGough*, 526 N.W.2d at 332. In *Prosser & Keeton on the Law of Torts*, it states:

Unless the present state of mind is misstated, there is of course no misrepresen-

tation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or for equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent. It may, however, be inferred from the circumstances.

W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 109, at 764–65 (5th ed. 1984).

 There is no substantial evidence that, at the time she made the statement to Magnusson, Dale knew that PENCO would not follow its company policy or that it always intended to use Holt as its agent for the Webster County account. There is no substantial evidence that Dale intended to deceive Magnusson. Despite the fact that Dale made a September 15 entry on an activity report, which noted that Holt was a prospective agent for Webster County, the entry also stated that Holt's insurance agency "wasn't sure if they were bidding or not. But thought they might."

Although there is substantial evidence that Weible lied, made false representations, and tried to cover-up the events surrounding the receipt of Magnusson's application, that does not necessarily amount to a fraudulent misrepresentation. All false statements and the cover-up by Weible occurred after Magnusson had submitted a completed application. Magnusson took no action in reliance on Weible's representations.

 In addition to the "actual knowledge" component of scienter, we must also determine whether there is any evidence of reckless behavior involving the statement made by Dale during the phone conversation. Here, Magnusson must show that Dale should have made further inquiries before telling Magnusson what she did. We do not believe there was any substantial evidence of reckless behavior by Dale. In *Garren v. First Realty, Ltd.*, 481 N.W.2d 335 (Iowa 1992), we stated that even if the speaker could have been more careful by making further inquiry, that is insufficient to prove that he or she acted in reckless disregard of the truth. *Garren*, 481 N.W.2d at 338.

We conclude there was insufficient evidence to justify submitting the fraudulent misrepresentation claim to the jury. Because substantial evidence did not support each element of Magnusson's claim, the district court was correct in granting the motion for JNOV.

## V. Punitive Damages.

Magnusson also claims that the award of punitive damages should be reinstated. In its ruling on the motion for JNOV, the district court held that, because it was entering judgment in PENCO's favor on both of Magnusson's claims, there was no basis for the punitive damages. Based on our holding on the fraudulent misrepresentation claim, Magnusson must rely solely on the breach-of-contract claim to support the punitive damages award.

 Generally, a breach of contract, even if intentional, is insufficient to support a punitive damage award. *White v. Northwestern Bell Tel. Co.*, 514 N.W.2d 70, 77 (Iowa 1994). We will only uphold an award of punitive damages for breach of contract when the breach (1) constitutes an intentional tort, and (2) is committed maliciously, in a manner that meets the standards of Iowa Code section 668A.1 (1993). *Id.* That statute requires proof, by a preponderance of clear, convincing, and satisfactory evidence, that the defendant's conduct amounted to a willful and wanton disregard for the rights or safety of another. *See* Iowa Code § 668A.1(1)(a). Because PENCO's breach of contract with Magnusson did not involve any intentional tort, Magnusson's claim for punitive damages must fail.

## VI. Motion for New Trial.

In its ruling on PENCO's motion for JNOV, the district court also conditionally granted PENCO's motion for new trial, stating that the verdict is contrary to law and not supported by the evidence. In its brief, PENCO argued that if we found sufficient evidence to submit the contract claim to the

jury, it was entitled to a new trial. We disagree.

 We review the granting or denial of a motion for new trial for abuse of discretion. *Bredberg*, 551 N.W.2d at 326. If a jury verdict is not supported by sufficient evidence and the verdict fails to effectuate substantial justice, a new trial may be ordered. *Id.*

 We conclude the district court abused its discretion in granting a new trial. The jury's verdict on the breach-of-contract claim is supported by substantial evidence in the record and substantial justice is effectuated by the jury's award on the claim.

VII. *Conclusion.*

The district court was correct in granting PENCO's motion for JNOV on the fraudulent misrepresentation claim and in finding there was no basis for the punitive damages. The court erred in granting PENCO's motion for JNOV on the breach-of-contract claim and in granting PENCO's motion for new trial. We remand for reinstatement of the judgment for $25,000 in Magnusson's favor.

Costs are assessed one-half to Magnusson, one-half to PENCO.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**