# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-1392

———————————————

Tom Rossley

*Plaintiff   Appellant*

v.

Drake University; Drake University Board of Trustees

*Defendants   Appellees*

———————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

———————

Submitted: March 12, 2020
Filed: May 4, 2020

———————

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

———————

GRASZ, Circuit Judge.

Tom Rossley served on the Drake University (the "University") Board of Trustees ("Board") for many years before the Board voted to remove him because of a purported conflict of interest. He sued the University and the Board, alleging Title

IX retaliation, disability retaliation, and breach of contract. The district court[1] dismissed his Title IX retaliation claim on the pleadings, and granted summary judgment to the University and the Board on the contract and disability retaliation claims. Rossley now appeals, and we affirm.

## I. Background

Tom Rossley is an alumnus and former Trustee of Drake University, a non-profit, private university in Des Moines, Iowa. In the fall of 2015, the University investigated an allegation of sexual misconduct against Rossley's son, Thomas Rossley, Jr. In the course of the Title IX investigation, Rossley Jr. was found responsible for the alleged sexual misconduct, and after an appeal process, was expelled from the University.

During this process, Rossley was critical of how the University handled his son's case. Rossley made phone calls, sent emails, and participated in conversations with other Board members, University alumni, University administrators, and donors about the situation. Specifically, Rossley complained that the University did not accommodate his son's disabilities during its investigation. Since childhood, Rossley Jr. suffered from ADHD, anxiety, and language-based disabilities, which "inhibit his ability to communicate effectively." Because Rossley's communications about his son's case form the basis of the Board's actions, we will provide an overview of the exchanges between Rossley, the University, and the Board.

In March of 2016, Rossley sent an email to the University's Vice President of Finance, as well as Rossley's wife, and the University's bond attorney, stating "please let this email serve as my disclosure that my son may be initiating litigation against

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Drake University in the event that his hearing verdict is not overturned on appeal." When this email was sent, Rossley Jr.'s expulsion appeal was still pending.

Then, in April, Rossley emailed the Dean of Students and the Chairman of the Board with a list of nine specific criticisms of the Dean and the University's investigation of his son. Rossley also addressed an earlier request made by the University that he avoid a popular off-campus establishment when he was in town due to an alleged "staring" incident between Rossley and a student who worked there. This student was a witness in his son's investigation. The tone of Rossley's email was dismissive and mocking. A few weeks later, Rossley sent another email to the Board as well as members of the University's faculty and administration, in which he criticized the University for failing to accommodate his son and selectively enforcing the University's sexual assault policy and Title IX.

A few days after this second email, and during an annual alumni event, Rossley spoke with the Board Chairman and another Board member. They asked Rossley to stop speaking to alumni and donors about his son's disciplinary process and the University's compliance with the law. Rossley admitted to having spoken to at least three alumni or donors in attendance at the event. Later, during his deposition, Rossley expanded the list of persons with whom he discussed his son's case to include "literally hundreds of people that [he] had conversations with, either directly or indirectly." The Chairman and Board member told Rossley that if he wanted to remain a Trustee he would need to "disassociate . . . from [his] son's issues" and stop talking about the matter. At the time, Rossley agreed to disassociate himself and later sent an "assurance" email recognizing the conflict of interest.

In the same assurance email, Rossley informed the Board his son had engaged the services of an attorney who would help his son "take[] his case to the next stage," and "to address this in the courts and, if necessary, the public arena." The Board of Trustee's Board Affairs Committee ("BAC") advised Rossley that his actions created

-3-

a conflict of interest under the University Bylaws. The BAC was concerned that Rossley could not discharge his fiduciary duty to the Board while also advocating for his son as a parent. To resolve this conflict, the BAC asked Rossley to take a leave of absence from the Board. Rossley responded with a lengthy letter denying a conflict of interest and refusing to take a leave. He also included proposed resolutions, including expunging his son's expulsion, granting his son a diploma immediately, compensating his son for lost income, and offering his son direct admission to the University's MBA program.

The University president sent an email to the Board advising it to hold a special meeting to vote on how to address Rossley's conflict of interest related to his son's Title IX case. The Board met, determined Rossley had a conflict of interest, and referred the matter back to the BAC to recommend a course of action. The BAC determined Rossley's conflict of interest was sufficient to amount to a "for cause" removal from the Board, and recommended removal upon a vote of the Board. The Board voted to remove Rossley due to his "pervasive conflict of interest," and "his insistence on using his position as trustee to advocate" on his son's behalf, who had "certainly threatened litigation" against the University.

In response, Rossley sued the University and the Board asserting five causes of action. After the district court granted various motions to dismiss, motions for judgment on the pleadings, and summary judgment motions, Rossley now appeals the dismissal of his Title IX retaliation, disability retaliation, and breach of contract claims.

-4-

## II. Analysis

## A. Title IX Retaliation

We first consider the district court's dismissal on the pleadings of Rossley's Title IX retaliation claim against the University. "We review a district court's grant of judgment on the pleadings *de novo*." *Levitt v. Merck & Co., Inc.*, 914 F.3d 1169, 1171 (8th Cir. 2019). "The movant has the burden of 'clearly establish[ing] that there are no material issues of fact and that [he] is entitled to judgment as a matter of law.'" *Id.* (first alteration in original) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). We must view all facts pled as true and grant all reasonable inferences in Rossley's favor. *Id.*

The district court dismissed Rossley's Title IX retaliation claim against the University for lack of standing. Under Title IX "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has interpreted Title IX to provide a private right of action for students complaining about teachers or peer-to-peer sexual harassment; it also allows individuals employed by federally-funded institutions to sue their employers. *See Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999) (finding a plaintiff could sue under Title IX for student-on-student sexual harassment); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998) (finding a student could sue for sexual harassment by a teacher); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 520–21 (1982) (finding employees are covered by Title IX regulations when the employer directly participates in federal programs or benefits from federal grants, loans, or contracts). Additionally, some federal courts have entertained causes of action for parents on behalf of their minor children or deceased adult children under Title IX. *See, e.g., Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1114 (N.D. Cal. 2013) (noting

"parents *do* have standing to assert Title IX claims on behalf of a student," but "in general, non-students such as parents do not have a *personal* claim under Title IX.").

Title IX also protects individuals who suffer retaliation after reporting instances of sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005). The Supreme Court explained in *Jackson* that "[w]here the retaliation occurs because the complainant speaks out about sex discrimination, the 'on the basis of sex' requirement is satisfied." *Id.* at 179. According to Rossley, this language from *Jackson* indicates that any Title IX advocate has a cause of action when retaliated against, regardless of whether the advocate is an employee, student, or individual subjected to discrimination under an education program or activity. We disagree. Retaliation "on the basis of sex" is not a sufficient condition for Title IX standing. The plain text of 20 U.S.C. § 1681(a) provides protection for persons from actions taken "on the basis of sex" only if it causes the prospective plaintiff to be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Therefore, if the action taken "on the basis of sex" against the person did not exclude, deny, or subject the person to discrimination under an education program or activity, then the action cannot be brought under § 1681(a).

Here, then, we must resolve whether Rossley's removal from the Board constitutes exclusion from or denial of an educational program or activity. Title IX informs us that "program or activity" means "all of the operations of" various institutions, including "a college, university, or other postsecondary institution, or a public system of higher education." 20 U.S.C. § 1687(2)(A). But this broad category of "all of the operations" in § 1687 is narrowed by the descriptor "*education* program or activity" in § 1681(a). Because Rossley does not appeal his action against the Board — only his claim against the University — we need not determine whether a Board of Trustees is an educational program or activity. Even assuming, but not deciding the work of the Board is an educational program, we are left to consider only

whether the alleged retaliation can be attributed to the University itself, undoubtedly a federally-funded education program.

Rossley specifically argues the University retaliated against him by: (1) removing him from the Board by a vote; (2) prohibiting him from serving as his son's advocate during the Title IX hearings; and (3) directing him not to visit a tavern near campus. None of these acts support a Title IX retaliation claim against the University.

First, we do not believe Rossley's removal from the Board can support a Title IX retaliation claim against the University. This was an internal vote of a Board of Trustees to remove one of its members. When taking this action, the Board was acting in a manner separate and distinct from the University itself. Therefore, we conclude, as a matter of law, Rossley cannot hold the University liable under Title IX for the separate decision of the Board regarding its own internal affairs.

Next, we consider Rossley's claim that the University retaliated against him by prohibiting him from serving as his son's advocate during the campus hearings. Taking the facts in the amended complaint as true, this claim fails. The amended complaint informs us that the University Code of Conduct allows an accused to have a "personal representative" present during a disciplinary hearing who may, but is not required to be, an attorney. The complaint also informs that Rossley's son had a "newly-retained attorney" who had "got[ten] involved." Rossley's complaint goes on to assert that his "disabled son [was forced] to be his own advocate and act as his own legal representative." And finally, it asserts that Rossley and his wife were not allowed to attend the hearings. But at no time does the complaint allege that Rossley Jr. requested his father to serve as his "personal representative" under the Code of Conduct, nor that such a request was denied by the University. Further, even if Rossley was prevented from attending his son's Title IX hearing, the complaint contains no facts showing a nexus between this inability to attend the hearing and

Rossley's alleged complaints to the Board. Without such a nexus, a claim of Title IX retaliation by the University must fail as a matter of law.

And finally, we consider Rossley's argument that the University's direction to Rossley to not frequent an off-campus tavern could support a retaliation claim. This request, while perhaps beyond the bounds of the University's power, did not deny Rossley access to any education activity or program. Instead, it was a request to not frequent an establishment outside the University's control. As such, none of the actions Rossley alleges the University took against him in retaliation were part of an education program or activity, and therefore he lacks standing to bring suit under 20 U.S.C. § 1681(a).

Rossley invites our court to expand Title IX's reach such that "any advocate has standing to bring a retaliation claim under Title IX, and to establish such a claim a plaintiff need only show that he was retaliated against *because* he complained of sex discrimination." Because neither the statutory text nor the precedent supports such an expansion, we affirm the district court's dismissal of Rossley's Title IX retaliation claim for lack of standing.

## B. Disability Retaliation

We next consider the district court's grant of summary judgment against Rossley's disability retaliation claim. We review the district court's grant of summary judgment de novo, "construing the record in the light most favorable to the nonmoving party." *Wages v. Stuart Mgmt. Corp.*, 798 F.3d 675, 679 (8th Cir. 2015). "Even if not discussed by the district court, we may affirm on any ground supported by the record." *Id.*

The district court granted summary judgement in favor of the University and the Board on Rossley's claim that they retaliated against him in violation of Title III

of the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and the Iowa Civil Rights Act. Summary judgment was granted in favor of the University and the Board because the district court concluded Rossley failed to provide any evidence showing the defendants' decisions or actions were pretext for retaliatory animus. On appeal, Rossley argues the district court "did not do justice to [his] retaliation case when it selectively chose to highlight only those actions relied upon by Drake to support its motion for summary judgment," which resulted in a no pretext finding.

For purposes of summary judgment all parties concede that (1) Rossley could state a prima facie case of retaliation, and (2) the University and the Board had a legitimate, non-discriminatory reason for his removal from the Board. Thus, the only question on appeal is whether Rossley could prove the non-discriminatory reason for his removal was actually a pretext for disability retaliation. *Moses v. Dassault Falcon Jet Wilmington Corp.*, 894 F.3d 911, 924 (8th Cir. 2018). Rossley asserts the district court erred by improperly relying on facts highlighted by the University and the Board, and that it failed to view the evidence in the light most favorable to him. He also argues the district court erroneously relied on Eighth Circuit precedent in *Mershon v. St. Louis University*, because he believes the facts are distinguishable. 442 F.3d 1069 (8th Cir. 2006).

Viewing the facts in the light most favorable to Rossley, we find that the Board voted to remove Rossley from his position of Trustee due to his "[p]ervasive conflict of interest" with the University, and only after Rossley refused to take a leave of absence from the Board. This decision was bolstered by the emails from Rossley intimating he or his son may sue the University. And while Rossley asserts that other Trustees "were previously personally involved in Title IX proceedings at the University" but were not found to have conflicts of interest, we find this suggestion dubious. Nothing suggests these other allegedly personally-involved Trustees sent emails to the University about possible litigation, asked the Board to consider reversing a University disciplinary decision, or spoke to faculty, alumni, and donors

about their children's situation. The factual dissimilarities between Rossley and the other interested Board members he identifies do not generate an inference that the Board removed Rossley because of disability-related animus. No question of fact exists for a jury. Rossley has not shown any evidence that the proffered reason — a pervasive conflict of interest — was not the motivation behind his removal from the Board. One cannot reasonably infer that either the University or the Board retaliated against Rossley.

And although it is true the facts in *Mershon* are distinguishable from the actions Rossley and the University undertook here, its principles are nonetheless applicable. In *Mershon*, a former student was prevented from returning to St. Louis University's ("SLU") campus shortly after he allegedly complained of SLU's failure to accommodate his disability. The former student therefore argued that the timing of SLU's action indicated pretext. We disagreed. SLU had explained it prevented the student's return because it believed the student had threatened a professor with violence. 442 F.3d at 1073. The former student's claim that he had complained about his lack of accommodations shortly before his removal did not undercut SLU's proffered explanation, because the university's explanation justified the student's prompt removal. *Id.* at 1075. The same principle applies here. Rossley's removal shortly after his threat of litigation does not undercut the Board's proffered explanation, because the ever-increasing conflict between Rossley's interests and the University's justified Rossley's removal at the time. Therefore the district court did not err in relying on *Mershon* in its analysis.

## C. Contract Claim

Finally, Rossley argues the district court erred by granting summary judgment for the University and the Board on his breach of contract claim. Reviewing de novo, we affirm. *Wages*, 798 F.3d at 679.

Under Iowa law, a breach of contract is proven by showing there was capacity to contract, the existence of certain elements of a contract, and a showing of breach. *Magnusson Agency v. Pub. Entity Nat'l Co. Midwest*, 560 N.W.2d 20, 25 (Iowa 1997). At the heart of such a claim is the existence of a contract, which requires an offer and acceptance. *Id.* at 26. "The test for an offer is whether [the alleged offer] induces a reasonable belief in the recipient that he or she can, by accepting, bind the sender." *Id.* "If an offer is not definite, there is no intent to be bound." *Id.*

Here, Rossley claims he entered a contract with the University and the Board when he was asked to serve as a Trustee of the University and he then accepted this unpaid, volunteer position. But Rossley offered no evidence of a definite contractual offer. He does not recall receiving a written contract governing his service with the Board, nor did he present any evidence of a verbal contract with definite terms or conditions. Rossley admits the Trustees were unpaid volunteers and the Bylaws do not include any specific provisions requiring certain promises in exchange for service on the Board.

Rossley readily concedes he and the other Board members "voluntarily accepted" their positions to serve on the Board of Trustees. Under Iowa law, "if the promisor did not seek anything in exchange for the promise made," then there is no consideration to support the alleged contract. *Margeson v. Artis*, 776 N.W.2d 652, 655–56 (Iowa 2009). The only evidence of an exchange Rossley can point to is that, in return for his service as a Trustee, he was provided with liability insurance as well as free meals and entertainment on certain occasions. However, the mere provision of liability insurance for Trustees without any evidence that such insurance was a part of the bargained for exchange — that is, a part of the offer made to Rossley — is insufficient to constitute contractual consideration under Iowa law. Viewing the evidence in the light most favorable to Rossley, we can only determine that he was asked to serve on the Board as an unpaid, uncompensated volunteer. There was no consideration present in Rossley's alleged contract with the University and the Board,

-11-

and as such the breach of contract claim fails as a matter of law.  The district court properly granted summary judgment.

## III.  Conclusion

For the foregoing reasons, we affirm the decision of the district court.

_____